UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-CV-20353-DPG

JOSE AGUIRRE,

    Plaintiff,

vs.

DRAFTKINGS, INC.

    Defendant.

_____/

**DEFENDANT'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO COMPEL ARBITRATION AND DISMISS PROCEEDINGS**

## TABLE OF CONTENTS

|     |     |     | Page |
| --- | --- | --- | ---: |
| I.  | INTRODUCTION AND SUMMARY OF ARGUMENT | | 1 |
| II. | FACTUAL BACKGROUND | | 2 |
|     | A. | Plaintiff's Use Of The DraftKings Website And Agreement To The Terms Of Use, Including Its Arbitration Provision | 2 |
|     | B. | Disregarding His Agreement To Arbitrate, Plaintiff Improperly Pursued His Dispute In This Court Eight Days After He Created His DraftKings Account | 3 |
| III.| ARGUMENT | | 4 |
|     | A. | Plaintiff Must Arbitrate His Claims Against DraftKings On An Individual Basis | 4 |
|     |    | 1. The Written Arbitration Provision Is Valid | 5 |
|     |    | 2. All Of Plaintiff's Claims Fall Within The Scope Of The Arbitration Provision | 7 |
|     |    | 3. DraftKings Has Not Waived Its Right To Arbitrate | 8 |
|     | B. | Plaintiff Cannot Avoid His Agreement To Arbitrate | 9 |
|     |    | 1. The Arbitration Provision Is Not Unconscionable | 9 |
|     |    | 2. The Requirement To Proceed On An Individual Basis In Arbitration Is Enforceable | 11 |
|     | C. | The Court Should Dismiss The Complaint As All Claims Are Subject To Arbitration | 12 |
|     | D. | DraftKings Should Be Awarded Its Attorneys' Fees And Expenses Incurred In Enforcing Arbitration | 13 |
| IV. | CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express v. Italian Colors Restaurant*,
 133 S. Ct. 2304 (2013) .................................................................................................... 11

*Cruz v. Cingular Wireless, LLC*,
 648 F.3d 1205 (11th Cir. 2011) .................................................................................. 1, 12

*Curbelo v. Autonation Benefits Co.*,
 No. 14-62736, 2015 WL 667655 (S.D. Fla. Feb. 17, 2015) ........................... 4, 9, 10, 12

*Dean Witter Reynolds, Inc. v. Byrd*,
 470 U.S. 213 (1985) .......................................................................................................... 5

*Fteja v. Facebook, Inc.*,
 841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................... 6, 7, 11

*Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*,
 553 F.3d 1351 (11th Cir. 2008) ....................................................................................... 4

*Ibrahim v. Morton's Restaurant Grp, Inc.*,
 No. 04-20554, 2005 WL 6068544 (S.D. Fla. Mar. 16, 2005) .................................. 2, 14

*IT Strategies Grp, Inc. v. Allday Consulting Grp, LLC*,
 975 F. Supp. 2d 1267 (S.D. Fla. 2013) ........................................................................... 6

*Kozma v. Hunter Scott Fin., LLC*,
 No. 09-80502-CIV, 2010 WL 724498 (S.D. Fla. Feb. 25, 2010) ................................ 13

*Lambert v. Austin Ind.*,
 544 F.3d 1192 (11th Cir. 2008) ....................................................................................... 5

*LexisNexis Risk Solutions FL, Inc. v. Spiegel*,
 No. 14-80666, 2014 WL 3361910 (S.D. Fla. July 9, 2014) ........................................... 8

*Maldonado v. Mattress Firm, Inc.*,
 No. 13-292-T, 2013 WL 1760272 (M.D. Fla. April 24, 2013) ...................................... 5

*Manard v. Knology, Inc.*,
 No. 4:10-15-CDL, 2010 WL 2528320 (M.D. Ga. June 18, 2010) ................................ 5

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
 460 U.S. 1 (1983) .............................................................................................................. 8

*Pendergast v. Sprint Nextel Corp.*,
　691 F.3d 1224 (11th Cir. 2012) ............................................................................................. 10

*Perera v. H&R Block Eastern Enter., Inc.*,
　914 F. Supp. 2d 1284 (S.D. Fla. 2012) ........................................................................ 5, 7, 13

*Shearson/Am. Express, Inc. v. McMahon*,
　482 U.S. 220 (1987) .............................................................................................................. 1

*Stolt-Nielsen v. Animalfeeds Int'l Corp.*,
　130 S. Ct. 1758 (2010) ........................................................................................................ 12

*Swift v. Zynga Game Network, Inc.*,
　805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) .................................................................... 6, 11

*United States v. Faris*,
　583 F.3d 756 (11th Cir. 2009) ............................................................................................... 5

*Vernon v. Qwest Commc'ns Intern., Inc.*,
　857 F. Supp. 2d 1135 (D. Colo. 2012) .................................................................................. 6

**Statutes**

9 U.S.C. § 1 ................................................................................................................................ 1, 3
9 U.S.C. § 2 ................................................................................................................................... 5

## MOTION AND MEMORANDUM OF LAW

Defendant DraftKings, Inc. ("DraftKings") respectfully petitions this Court, pursuant to the Federal Arbitration Act ("FAA") (9 U.S.C. § 1, *et seq.*), for an order compelling individual arbitration of each of the claims raised by Plaintiff Jose Aguirre ("Plaintiff") in accordance with the terms of the parties' binding arbitration agreement.

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This matter belongs in front of an arbitrator, not a court, because the parties agreed to arbitrate any disputes arising out of their relationship. DraftKings provides customers, such as Plaintiff, with an opportunity to enter online fantasy sports contests by registering to use DraftKings' web-based service. As part of the login and registration process, Plaintiff agreed to DraftKings' Terms of Use, through which the parties agreed that "***any and all disputes***" between them would be referred to binding, non-class arbitration before the American Arbitration Association ("AAA"). (Dent Decl. Ex. A (Terms of Use) at 4.) DraftKings requested Plaintiff to voluntarily dismiss this lawsuit and pursue arbitration in accordance with the Terms of Use, but he refused this request. Accordingly, DraftKings is petitioning this Court to compel Plaintiff to arbitrate this dispute as the parties agreed.

There is a strong policy in favor of enforcing arbitration agreements; indeed, the Supreme Court has ordered courts to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see also Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011) (the Federal Arbitration Act "makes written agreements to arbitrate valid, irrevocable, and enforceable"). This policy is so strong that in certain circumstances the courts of this district have ordered a party who disregards a binding arbitration provision—as Plaintiff has done here—to pay the attorneys' fees and expenses associated with bringing a petition to compel. *See Ibrahim v. Morton's Restaurant Grp, Inc.*, No. 04-20554, 2005 WL

1

6068544, at *2 (S.D. Fla. Mar. 16, 2005). Here, the parties' agreement expressly provides that a party who fails to abide by the arbitration provision must pay "all attorneys' fees and expenses reasonably incurred in enforcing this Agreement to arbitrate and the Forum to which the parties have herein agreed," making such an award proper. (Dent Decl. Ex. A (Terms of Use) at 5.) Because Plaintiff has failed to abide by the clear arbitration provision, requiring both the Court and DraftKings to needlessly expend resources, this Court should grant this petition, dismiss Plaintiff's lawsuit, and require Plaintiff to reimburse DraftKings for the attorneys' fees and expenses incurred to bring this petition.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Use Of The DraftKings Website And Agreement To The Terms Of Use, Including Its Arbitration Provision

Plaintiff's lawsuit centers around his use of DraftKings' online fantasy sports website, through which Plaintiff alleges he made an initial deposit of $25 to participate in online fantasy sports contests. (Compl. ¶ 31-32.) To use the DraftKings website and make this deposit, Plaintiff was first required to review and accept the Terms of Use that govern the website and the parties' relationship. The Terms of Use to which Plaintiff agreed contained an arbitration provision, under which both DraftKings and Plaintiff agreed that any and all disputes between them would be resolved in small claims court or binding, non-class arbitration, and that any party failing to abide by the arbitration provision would bear the costs and attorneys' fees incurred to compel compliance with the arbitration agreement:

> Any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website (including all commercial transactions conducted through the Website) ("Claims"), except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis, shall be settled by binding arbitration before a single arbitrator appointed by the American Arbitration Association ("AAA") in accordance with its then governing rules and procedures[.]

\* \* \*

> This arbitration undertaking is made pursuant to and in connection with a transaction involving interstate commerce, and shall be governed by and construed and interpreted in accordance with the Federal Arbitration Act at 9 U.S.C. Section 1, et seq. This arbitration provision shall survive termination of this Agreement[.] … Any and all claims shall be arbitrated on an individual basis only, and shall not be consolidated or joined with or in any arbitration or other proceeding involving a Claim of any other party. You and DraftKings agree that the arbitrator shall have no authority to arbitrate any Claim as a class action or in any other form other than on an individual basis.
>
> In the event that either party initiates a proceeding involving any Claim other than an arbitration in accordance with this Section, or initiates a proceeding involving a Claim under this Section other than in the Forum, the other party shall recover all attorneys' fees and expenses reasonably incurred in enforcing this Agreement to arbitrate and the Forum to which the parties have herein agreed.

(Dent Decl., Ex. A (Terms of Use) at 4-5.) Plaintiff successfully registered an account with DraftKings on January 21, 2015. (*Id.*, Ex. B.)

**B.     Disregarding His Agreement To Arbitrate, Plaintiff Improperly Pursued His Dispute In This Court Eight Days After He Created His DraftKings Account**

Contrary to his agreement to the DraftKings' Terms of Use and its arbitration provision, Plaintiff filed this putative class action on January 29, 2015, asserting the following class claims: (1) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") based on an alleged violation of the Florida Free Gift Advertising Law; (2) violation of the FDUTPA based on unfair and deceptive practices; and (3) fraud in the inducement. (Compl. ¶¶ 45-46, 52-53, 59-61.) More specifically, Plaintiff challenges DraftKings' offers to double a customer's first deposit, up to $600, alleging that the offer is deceptive and unfair because it is subject to certain terms and conditions.[1]

---

[1] DraftKings vigorously disputes Plaintiffs' allegations. DraftKings plainly describes the terms of its double deposit offering on its website. DraftKings will not burden the Court here with a description of the fatal flaws with Plaintiffs' allegations and claims because the point of this motion is that this dispute should be decided by an arbitrator as the parties agreed.

3

After filing his Complaint, Plaintiff sent DraftKings a request to waive service of process. DraftKings responded by informing Plaintiff's counsel that rather than proceed in court, the dispute must be arbitrated in accordance with the Terms of Use. (Blanson Decl., Ex. B.) Plaintiff, however, refused DraftKings' request to arbitrate, and proceeded to reiterate his request that DraftKings waive service of process. (Blanson Decl., Ex. C.) Because of Plaintiff's insistence on improperly proceeding in this forum notwithstanding the parties' agreement to arbitrate, DraftKings is now required to petition this Court to compel arbitration.

### III.   ARGUMENT

**A.   Plaintiff Must Arbitrate His Claims Against DraftKings On An Individual Basis**

Under both federal and Florida law, courts have considered three factors in determining whether a party is compelled to arbitrate: (1) the existence of a valid written agreement containing an arbitration clause between the parties; (2) the presence of an arbitrable issue; and (3) the conduct of the party seeking to enforce arbitration does not indicate a waiver of its arbitration right. *Curbelo v. Autonation Benefits Co.*, No. 14-62736, 2015 WL 667655, at *2 (S.D. Fla. Feb. 17, 2015).

If all three factors are met—as is the case here—then "the Court is required to issue an order compelling arbitration." *Id.* (citing *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) ("The role of the courts is to rigorously enforce agreements to arbitrate.")).

Under the FAA[2], there is a strong federal policy favoring arbitration, as arbitration provisions are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

---

[2] The Federal Arbitration Act ("FAA") governs arbitration agreements, like the one at issue here, affecting interstate commerce. 9 U.S.C. § 2, *et seq.* Here, the Terms of Use to which the parties agreed affect interstate commerce because the agreement governs an interstate
*(Cont'd on next page)*

4

equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, the Supreme Court has "repeatedly described the [FAA] as embodying a national policy favoring arbitration and a liberal federal policy favoring arbitration agreements[.]" *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) (internal citation omitted). "In line with [the principles of the FAA], courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Id.* at 1745 (internal citations omitted). As a result, "absent a ground for revocation of the contractual agreement," the FAA "leaves no place for the exercise of discretion by a district court, [and] instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

1. **The Written Arbitration Provision Is Valid**

Plaintiff and DraftKings agreed to a valid written arbitration provision in the Terms of Use. For a written arbitration agreement to be valid, it must be "enforceable under ordinary state-law contract principles." *Perera v. H&R Block Eastern Enter., Inc.*, 914 F. Supp. 2d 1284, 1287 (S.D. Fla. 2012) (citing *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008)). Under Florida law, a valid contract requires (1) an offer, (2) an acceptance, and (3) consideration. *Maldonado v. Mattress Firm, Inc.*, No. 13-292-T, 2013 WL 1760272, at *2 (M.D. Fla. April 24, 2013). When he voluntarily clicked the box "I agree to the Terms of Use and the

---

*(Cont'd from previous page)*

transaction between Plaintiff and Defendant made over the Internet. It is well-settled that the Internet is an "instrumentality of interstate commerce," *United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) (internal quotations omitted), and that the FAA therefore applies to agreements made over the Internet, such as the one between Plaintiff and DraftKings. *Manard v. Knology, Inc.*, No. 4:10-15-CDL, 2010 WL 2528320, at *3 (M.D. Ga. June 18, 2010). All of these connections are sufficient to establish that the Terms of Use at issue here evidence transactions involving interstate commerce, such that the FAA then applies in this case.

Privacy Policy" at registration on January 21, 2015, Plaintiff plainly consented to the governing Terms of Use and is now bound by its terms.

To use the DraftKings website, the user must agree to the Terms of Use, including its arbitration provision. DraftKings' Terms of Use constitute an offer which Plaintiff accepted, and Plaintiff cannot now avoid his obligations under these binding terms by arguing that his assent was insufficient. The Terms of Use were presented to him online. While Plaintiff may argue that he did not read the terms, "[w]hether or not the consumer bothers to look [at the terms of the agreement] is irrelevant." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (holding that plaintiff assented to Facebook's Terms of Use that were accessible via hyperlink).

Moreover, online agreements like the one Plaintiff entered with DraftKings (sometimes referred to as "modified clickwrap agreements"[3]) are valid and fully enforceable as a matter of law because clicking an "I accept" button, as Plaintiff did here, manifests assent sufficient to bind parties to the agreement. *IT Strategies Grp, Inc. v. Allday Consulting Grp, LLC*, 975 F. Supp. 2d 1267, 1283 (S.D. Fla. 2013) (noting that an agreement containing a hyperlink to the online user agreement provided sufficient notice of the terms being agreed to); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (enforcing arbitration provision "in light of recent caselaw holding that clickwrap presentations providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient."); *Fteja*, 841 F. Supp. 2d

---

[3] Courts have categorized these situations "in which the customer must take affirmative action—pressing a 'click' button" and the terms being accepted via mouse click "are available with the use of hyperlink," as modified clickwrap agreements. *Vernon v. Qwest Commc'ns Intern., Inc.*, 857 F. Supp. 2d 1135, 1149-50 (D. Colo. 2012); *Swift*, 805 F. Supp. 2d at 910 (categorizing a situation "where the terms of service are not visible on the page but instead are linked by the blue hyperlink within a smaller grey font following the 'Allow' button" as a modified clickwrap agreement).

at 839 ("[F]or those to whom the internet is an indispensable part of daily life, clicking the hyperlinked phrase [to the Terms of Use] is the twenty-first century equivalent of turning over the cruise ticket" to review the governing terms).

Here, Plaintiff was provided with an opportunity to review the governing Terms of Use in the form of a hyperlink included in the "I agree to the Terms of Use and Privacy Policy" button. (Dent Decl. ¶¶ 4-5.) And because Plaintiff completed registration of his DraftKings account, he affirmatively assented to be bound by the Terms of Use and its arbitration provision by clicking the "I agree to the Terms of Use and the Privacy Policy" button; a customer simply cannot deposit funds or use the website *until* he first has agreed to the Terms of Use. (*Id.* at ¶ 5.)

Moreover, DraftKings afforded Plaintiff ample opportunity to first review the governing Terms of Use before placing his initial $25 deposit. In addition to the hyperlink that DraftKings presented to Plaintiff, the Terms of Use are available on DraftKings' website at all times and no account, log-on, or money deposits are required to review them. Plaintiff (and any potential user, for that matter) is free to review the current Terms of Use at any time. (*Id.* at ¶ 2.) Under these circumstances, Plaintiff cannot argue he was unaware that his relationship with DraftKings was governed by the Terms of Use and its arbitration provision, that he did not accept its terms, or that he is not bound by them. Accordingly, under the Terms of Use, Plaintiff was required to either bring his claims on an individual basis in small claims court or be submitted to a binding, non-class arbitration. (Dent Decl., Ex. A (Terms of Use) at 4-5.)

2. **All Of Plaintiff's Claims Fall Within The Scope Of The Arbitration Provision**

Each of Plaintiff's claims is an arbitrable issue under the Terms of Use and therefore must be submitted to binding, non-class arbitration. The scope of the arbitration provision is a matter of contract interpretation and is thus governed by the language in the arbitration agreement. *Perera*, 914 F. Supp. 2d at 1287-88. When interpreting the agreement, "any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a [] defense to arbitrability." *LexisNexis Risk Solutions FL, Inc. v. Spiegel*, No. 14-80666, 2014 WL 3361910, at *2 (S.D. Fla. July 9, 2014) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).

All of Plaintiff's claims (*i.e.*, his FDUTPA claims and fraud in the inducement claim) fall squarely within the scope of DraftKings' Terms of Use. Plaintiff's claims constitute a "dispute[] . . . arising out of or relating to this Agreement, the breach thereof, or any use of the Website (including all commercial transactions conducted through the Website)[.]" Plaintiff made his initial deposit of $25 through the DraftKings Website (Compl. ¶ 31), used that $25 deposit to pay entry fees to enter multiple DraftKings fantasy contests through the Website (*id.* ¶ 32), and asserts that he was not able to withdraw all of the matching deposit that was credited to his account unless he entered more fantasy sports contests on the Website (*id.* ¶¶ 31, 32). Accordingly, all his claims arise out of his use of the Website, and his agreement with DraftKings regarding the deposit promotion. The claims must, therefore, be submitted to binding, non-class arbitration.

### 3. DraftKings Has Not Waived Its Right To Arbitrate

DraftKings has sought to enforce the arbitration provision at every step of the way, and it has not waived the right to arbitrate. Even before it was served in this case, DraftKings demanded that Plaintiff dismiss his Complaint and pursue the dispute, if at all, in arbitration. (Blanson Decl., Ex. B.) Plaintiff still refused to submit his claim to arbitration in accordance with the Terms of Use (*id.*, Ex. C.), and Defendants promptly petitioned the Court to compel arbitration. Aside from the ministerial acts of entering an appearance, and filing *pro hac vice*

applications, the only action DraftKings has taken before the Court is filing the instant petition to compel arbitration.

**B.  Plaintiff Cannot Avoid His Agreement To Arbitrate**

Here, Plaintiff cannot set forth any valid ground upon which the arbitration agreement can be revoked, and the Court should enforce the agreement. *See Curbelo*, 2015 WL 667655, at \*2 (enforcing arbitration agreement because plaintiff could not show the agreement was invalid). Because Plaintiffs seeking to avoid their obligations to arbitrate often argue that the provision is unconscionable or that it would be unfair to require non-class arbitration, DraftKings will discuss those issues below. Neither of them have any merit.

**1.  The Arbitration Provision Is Not Unconscionable**

Plaintiff cannot satisfy his burden to demonstrate that the arbitration agreement is invalid or the issue otherwise non-arbitrable; under Florida law[4], a party seeking to invalidate an

---

[4] Florida courts typically apply the choice-of-law provision in binding contractual agreements to the unconscionability analysis. *See, e.g., In re Taylor*, 260 B.R. 548, 558 (M.D. Fla. 2000) ("[I]n accordance with Florida's public policy favoring freedom of contract, the Court will determine the validity of the arbitration clause under the law that the parties agreed would govern any dispute under the contract . . . ."); *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (applying Florida law to the unconscionability analysis when the binding agreement at issue did not contain "a contrary choice-of-law provision"). Here, the Terms of Use to which Plaintiff agreed included a choice-of-law provision selecting Massachusetts law. (Dent Decl., Ex. A (Terms of Use) at 5 ("These Terms of Use shall be governed by the internal substantive laws of the Commonwealth of Massachusetts, without respect to its conflict of laws principles.").) Accordingly, Massachusetts law governs the unconscionability analysis; however, because the laws of the two states do not differ in material part, the result is the same regardless of whether Massachusetts or Florida law is applied. *See, e.g., Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 6 (1st Cir. 2014) (Massachusetts courts require that the defendants "must demonstrate that a valid agreement to arbitrate exists, that they are entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope."); *see also In re DiMare*, 462 B.R. 283, 307 (Bankr. D. Mass. 2011) ("[T]he test for unconscionability [of an arbitration provision under Massachusetts law] is a conjunctive one and the plaintiff must prove both procedural and substantive unconscionability to prevail.").

9

otherwise valid arbitration provision must demonstrate that the provision is both "procedurally and substantively unconscionable." *Id.*; *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1229 (11th Cir. 2012). Neither of these conditions is present here.

"Substantive unconscionability requires a showing that the terms of the arbitration agreement are unreasonable and unfair, and focuses on whether the arbitration provision is so outrageously unfair as to shock the judicial conscience." *Curbelo*, 2015 WL 667655, at *3 (quotations and citations omitted). Plaintiff cannot demonstrate that DraftKings' arbitration provision contains any terms that are unreasonable and unfair, never mind "so outrageously unfair as to shock the judicial conscience." *Id.* Here, the provisions are mutual, reciprocal, and provide for arbitration before a recognized and respected organization that has developed a comprehensive set of rules to govern arbitrations and ensure fairness to all parties involved—the AAA. The arbitration provision further incorporates the Supplementary Procedures for Consumer-Related Disputes, which provides that DraftKings will pay for the arbitrator's compensation. (*See* Blanson Decl., Ex. D, at 33.) There simply is no basis for any argument of unreasonableness or unfairness in these arbitration provisions.

Nor can Plaintiff demonstrate procedural unconscionability, which is required to invalidate an otherwise valid arbitration provision. Procedural unconscionability focuses on "(1) the manner in which the contract was entered into; (2) whether the complaining party had a meaningful choice at the time the contract was entered into; [and] (3) whether he or she had a reasonable opportunity to understand the terms of the contract." *Curbelo*, 2015 WL 667655, at *3 (quotations and citations omitted). Plaintiff voluntarily agreed to the DraftKings' Terms of Use when he completed registration for a DraftKings account, deposited money through the website, and participated in multiple fantasy contests. The Terms of Use are freely available on

DraftKings' website, and are hyperlinked to the button users must click to demonstrate assent to DraftKings' Terms of Use and Privacy Policy at registration. (Dent Decl. ¶¶ 2, 4-5.) There is nothing unconscionable about that procedure, and the courts have consistently upheld Terms of Use agreements similar to the one that Plaintiff entered into with DraftKings. *See, e.g., Fteja*, 841 F. Supp. 2d at 840-41 (holding that hyperlinked Terms of Use was valid when plaintiff was "informed of the consequences of his assenting click and he was shown [via hyperlink] where to click to understand those consequences") (collecting cases); *Swift*, 805 F. Supp. 2d at 912 (holding that an arbitration provision was binding "[b]ecause Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept'").

### 2. The Requirement To Proceed On An Individual Basis In Arbitration Is Enforceable

To the extent Plaintiff contends that the requirement he pursue his claims individually in a binding, non-class arbitration renders the agreement unenforceable, the Supreme Court has already rejected that argument.[5] The Supreme Court has repeatedly held that parties may waive their right to pursue collective action. And when they do so, agreeing to proceed in a bilateral arbitration where each party is proceeding on an individual basis, that agreement will be enforced. *Am. Express v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms, including terms that specify *with whom* [the parties] choose to arbitrate their disputes, and the rules under which that

---

[5] The relevant section of the Terms of Use provides:

"Any and all claims shall be arbitrated on an individual basis only, and shall not be consolidated or joined with or in any arbitration or other proceedings involving a Claim of any other party. You and DraftKings agree that the arbitrator shall have no authority to arbitrate any Claim as a class action or in any other form other than on an individual basis." (Dent Decl., Ex. A (Terms of Use) at 4.)

11

arbitration will be conducted.") (internal quotations and citations omitted); *cf. Stolt-Nielsen v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."); *Concepcion*, 131 S. Ct. at 1751 (holding that a "switch from bilateral to class arbitration" without explicit consent is fundamentally inconsistent with the FAA's substantive provisions).

Moreover, Plaintiff cannot attempt to use any state-law doctrines or notions of "unconscionability" to circumvent the decisions of the Supreme Court recognizing the validity of a class action waiver. Indeed, "[r]egardless of whether a class action waiver may be substantively unconscionable under Florida law, in light of the Supreme Court's holding in [*Concepcion*], that state rule would be inconsistent with and, thus, preempted by the FAA." *Curbelo*, 2015 WL 667655, at *4; *Pendergast*, 691 F.3d at 1235. Moreover, like the plaintiffs in *Concepcion* and *Cruz*, Plaintiff here "do[es] not allege any defects in the formation of the contract, aside from its generally adhesive nature, which alone is insufficient to invalidate a consumer contract." *Cruz*, 648 F.3d at 1215 (citing *Concepcion*, 131 S. Ct. at 1750). Consequently, any assertion Plaintiff may make regarding the "unconscionability" of the class action waiver he assented to would impermissibly conflict with *Concepcion*. The presence of a class action waiver does not impact the validity of the arbitration agreement, and Plaintiff must pursue his claims, if at all, in a binding, non-class arbitration.

### C.   The Court Should Dismiss The Complaint As All Claims Are Subject To Arbitration

Plaintiff has brought no claim that is not subject to arbitration. When every claim raised in a complaint is subject to arbitration, courts will couple their grant of a petition to compel with an order dismissing the complaint, as no claims are pending before the court. *Perera*, 914 F.

Supp. 2d at 1289-90 ("A case in which arbitration has been compelled may be dismissed in the proper circumstances, such as when *all* issues raised in . . . court must be submitted to arbitration. [] The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."); *Kozma v. Hunter Scott Fin., LLC*, No. 09-80502-KAM, 2010 WL 724498, at *2 (S.D. Fla. Feb. 25, 2010) (noting that the 11th Circuit has "frequently affirmed where the district court compelled arbitration and dismissed the underlying case"); *Sierra v. Cruise Ships Catering & Servs. Int'l*, No. 13-62827-DPG, ECF. No. 13, at 2 (S.D. Fla. Oct. 15, 2014) (dismissing all counts of plaintiff's complaint after granting defendant's motion to compel arbitration).[6]

Accordingly, DraftKings respectfully requests that the Court both grant its petition to compel arbitration and dismiss the Complaint in its entirety.

### D. DraftKings Should Be Awarded Its Attorneys' Fees And Expenses Incurred In Enforcing Arbitration

Despite DraftKings' attempts to obtain Plaintiff's voluntary consent to submit this matter to arbitration, Plaintiff has proceeded on a path of litigation just eight days after he first created a DraftKings account that has since required DraftKings (and this Court) to needlessly expend time and money to ensure compliance with a clear and unambiguous arbitration provision.

---

[6] A majority of courts have held that dismissal is appropriate in circumstances like these. *Green v. SuperShuttle Intern., Inc.*, 653 F.3d 766, 770 (8th Cir. 2011) (Shephard, J., concurring) (noting that the majority of the federal circuits have held dismissal appropriate when all claims are arbitrable); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (same). Although the Eleventh Circuit has not addressed this issue directly, courts in this District have favored dismissal when—as in the case here—all claims are covered by a binding and valid arbitration agreement. *See, e.g., Perera*, 914 F. Supp. 2d at 1290; *Kozma*, 2010 WL 724498, at *2; *Olsher Metals Corp. v. Olsher*, No. 01-3212-AJ, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003).

Under both the Terms of Use and the governing law in this district, Plaintiff's conduct warrants an award of the attorneys' fees and costs required to bring this petition.

The parties' agreement expressly provides that DraftKings is entitled to its fees and costs for this motion to compel arbitration:

> In the event that either party initiates a proceeding involving any Claim other than arbitration in accordance with this Section, or initiates a proceeding involving a Claim under this Section other than in the Forum, the other party shall recover all attorneys' fees and expenses reasonably incurred in enforcing this Agreement to arbitrate and the Forum to which the parties have herein agreed.

(Dent Decl., Ex. A (Terms of Use), at 5.) This Court has enforced similar provisions when granting petitions to compel arbitration. *See Ibrahim*, 2005 WL 6068544, at *2 (citations omitted) (holding that defendants were entitled to reasonable attorneys' fees because "the Arbitration Agreement was valid and Plaintiffs cite[d] no legal reason why clause four, awarding attorneys' fees in litigation to compel arbitration, should [have been] severed"). In awarding fees, the Court would not only give life to the arbitration provisions, but also the enforcement mechanisms that the parties agreed would be in place if one of them did not abide by the agreement to arbitrate.

## IV. CONCLUSION

For all the foregoing reasons, DraftKings respectfully requests that the Court enter an order compelling Plaintiff to submit his claims to individual arbitration. In addition, DraftKings respectfully requests the Court to dismiss all of Plaintiff's claims and award DraftKings its attorneys' fees and expenses incurred in enforcing arbitration.

14

**RESPECTFULLY SUBMITTED** in Miami, Florida, on June 2, 2015.

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>*Of Counsel for DraftKings, Inc.*<br>333 South Grand Avenue, Suite 5400,<br>Los Angeles, California, 90071<br>Telephone: (213) 229-7000<br>Fax: (213) 229-6234<br>E-mail: tloose@gibsondunn.com<br>E-mail: jfogelman@gibsondunn.com<br>E-mail: aschwing@gibsondunn.com<br>*pro hac vice motion s forthcoming* | RIVERO MESTRE LLP<br>*Attorneys for DraftKings, Inc.*<br>2525 Ponce de Leon Boulevard, Suite 1000<br>Miami, Florida 33134<br>Telephone: (305) 445-2500<br>Fax: (305) 445-2505<br>Email: jmestre@riveromestre.com<br>Email: kblanson@riveromestre.com<br><br>By: ____s/ Jorge A. Mestre____<br>JORGE A. MESTRE<br>Florida Bar No. 088145<br>Kadian Blanson<br>Florida Bar No. 0098880 |

## CERTIFICATE OF SERVICE

I CERTIFY that on June 2, 2015, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

____s/ Jorge A. Mestre____
Jorge A. Mestre
